Good morning. My name is Myrna Alvarez and I represent the petitioner Hilda Rosa Brenes. I would like to reserve two minutes of my time for rebuttal. I'll help you. Keep an eye on the clock. Thank you. Ms. Brenes is a 40-year-old citizen of Nicaragua. She is married to a U.S. citizen and she has three U.S. citizen children who are aged 19, 11, and 7. The entirety of Ms. Brenes' family lives in the United States with the exception of her grandmother and one male cousin who live in Nicaragua. Before coming to the United States, Ms. Brenes and her family suffered horrific atrocities at the hands of the Sandinista government because Ms. Brenes' father had been a captain for the army under Somoza. When the Sandinista government took control of Nicaragua, Ms. Brenes' family was targeted. The Sandinista soldiers raped Ms. Brenes when she was 11 years old. Other Sandinista soldiers raped her mother on the same day she was pregnant and miscarried as a result, and they had to bury the baby in the backyard. Ms. Brenes' mother reported the rapes to the Sandinista headquarters, but nothing was ever done. They said they would come out to the house, but they never did. They never investigated. They did nothing. Ms. Brenes' father was dragged through the streets in chains. He was brutally beaten. He was raped in prison, and he was also tortured in other ways. Ms. Alvarez, can you help me with a couple of preliminary legal questions? Sure. As I understand it, she suffered a drug trafficking conviction for use of a telephone in furtherance of, I guess it was a, was it a methamphetamine, a pound of methamphetamine transaction? Well, we don't exactly know that it involved methamphetamine, because – Because she arranged for the delivery of a pound of some controlled substance. Well, she made telephone calls, but there was never – That's the use of a telephone in furtherance of a drug transaction. Right, well – Are you arguing the legitimacy of her conviction? Because my question was actually going to a different issue, but if you want to – Oh, no, no, please, no. Okay. So my question is, because it is a drug trafficking offense under the law, as I understand it, it is both an aggravated felony and presumptively a particularly serious crime. And if that's the case, as I understand the law, she's not entitled to asylum based on the statutory bar, and she's not eligible for withholding of removal relief. So I think what – and maybe that's where you were leading with your introduction. That leads us to the question of whether or not substantial evidence supports the board's finding that if she is removed to Nicaragua, it's more likely than not that she would be tortured, in which case she might be eligible for deferral of removal under CAP. That's a long question, but is that basically what this case presents to us here this morning? Well, I don't know that this Court should review the BIA's decision for substantial evidence. The problem is that they got the case wrong. They used erroneous facts in making their decision. Go ahead. If we don't review for substantial evidence, then what is our standard of review? Well, Your Honor, I think that the principles of Chenery are at – should be in practice at this point. Chenery tells us that if you have a decision that's inadequate or improper, that this Court is powerless to affirm the administrative decision below. They used Ms. Brenna's mother's testimony to render their decision. If you look at page 5 – Which one is improper about considering her mother's testimony? Oh, no, no. It was an error, a complete error. Here, if you may allow me to read, the decision at 5 of the administrative record reads, although the Respondent's asylum application indicates that people still ask for the Respondent's whereabouts and still resent her father's affiliation with the Somoza regime, the Respondent has visited Nicaragua at least three times since she left in 1986 with no apparent problems, which is completely false. The transcript that they cite to at 99 and 100 is – does not read that. That's her mother's testimony. Setting that aside, isn't there still substantial evidence to support the determination that there's no likelihood of torture? Your Honor, I think that you have to – if you look at the decision, if you look at the structure of the decision, it appears that they were balancing two things, and they were balancing erroneous facts. And if they're balancing erroneous facts in making their decision, then it's flawed. So because it's flawed, then this Court must remand so that they can use the appropriate facts to render a proper decision, not necessarily the decision we want, but an accurately prepared decision, not with – But I guess the question would be, if we set that – if we agree with you and say that they erred in making that statement in the final paragraph of the Board's decision, does there still remain substantial evidence in the record to support the Board's determination without regard to that consideration? In essence, I guess what it would be akin to would be almost a harmless error analysis. But I believe that Chenery makes this – renders this Court powerless to do that. I think you can't even look at the rest of the – Is there no materiality component to our substantial evidence review? Is that your argument? Well, I think that if you look at the decision and you read the final paragraph, it's very clear that the Court or the BIA is taking equities that would be on the side of the respondent and comparing them to the fact that she went back. They're saying, well, she went back three times, therefore she's safe, so we don't believe that deferral. Look at the paragraph above it, and I'll quote, the horrific events that the respondent and her mother testified about occurred over 20 years ago, and there's no indication that the men who perpetrated the assaults are still alive or active in the Army or that the current regime has any interest in the respondent or anyone in her family, particularly as her father is deceased. That doesn't have anything to do with whether or not she was able to safely visit the country, does it? Well, I think that their decision could have read, in the alternative, we find that because she hasn't left then, but they didn't use that language. Well, isn't that what the prefatory clause of the penultimate paragraph is? Although the respondent's asylum application indicates that people still ask for the respondent's whereabouts and still resent her father's affiliation with the Somoza regime. Can't we read that to be an alternative consideration? I don't think so, because I think that what's happening is that they're summarizing in the last paragraph. It's a summary. What about the final sentence of that paragraph? Similarly, the respondent's family continues to live in Nicaragua, and her mother, brother, and sister have also returned for visits with no reported issues or problems. Are you suggesting that the board erred in making that finding? Well, not necessarily, but I think it's just furthermore. I don't think that it really – So does this whole case turn on a portion of the sentence? The respondent has visited Nicaragua at least three times since she left in 1986 with no apparent problems? I think that that's a critical part of the case. Is that the case? You never really did answer Judge Rawlinson's question. Do we review for substantial evidence, or is it something more? Well, I think it's something more. I think that Your Honors need to look at the – when the BIA is entrusted with reviewing these cases, there's an expectation that they're going to do it accurately. This is a person who is pleading for her life. So your argument is it's a due process violation? Is that what you're arguing? I'm having a hard time understanding what the theory is of your claim to error on appeal. Well, Your Honor, I think that when this Court reviews this particular decision, I believe that the evidence, if you want to use a substantial evidence rule, the evidence in the decision of the BIA is fundamentally flawed. And because it's fundamentally flawed, you can't make a decision based on what you believe is a – Well, fundamentally flawed usually means it's just wrong. And that would mean that no reasonable fact finder could have achieved this result based on the record under review. But that's not – that's not any different than a substantial evidence review. That's why I keep asking you, what's your theory here? Is it a due process violation? Your Honor, I reserve two minutes for rebuttal. So you want to just leave my question hanging in the air as a rhetorical question? No, Your Honor. I'll think about it. Thank you. I'll give you a little extra time, but I really would like an answer to my question if you can give me one. Thank you. And when you come back, could you answer the question whether or not you relied on the Chenery argument in your brief? Okay. Thank you. Thank you, counsel. Let's hear from the United States. Good morning. Jane Shoffner for the respondent. In this case, Ms. Brenes' drug trafficking aggravated felony conviction renders her both removable and ineligible for asylum and withholding of removal. She is ineligible for asylum because it is a drug trafficking aggravated felony, and she is ineligible for withholding of removal because as a drug trafficking aggravated felony, that is presumed to be a particularly serious crime. I didn't hear any argument from Ms. Alvarez contesting what you just said. So it would help the panel if you could just address the argument on this challenge to the substantial evidence, finding that she's not eligible for deferral under CAP. Certainly. Because deferral of removal is the only relief available to her, the question is whether substantial evidence supports the agency's conclusion that it is not more likely than not that she would be tortured by or with the acquiescence of a government official upon her return to Nicaragua, now more than 20 years later. There was an error of fact in the BIA decision when it referred to the petitioner returning to Nicaragua three times. We agree that the citation in the board's decision is erroneous. The board did cite her mother's testimony that her mother returned more than three times. Was there any evidence in the record that she returned three times? Yes. And could you point us to the record? Yes. Of the public part of the record. Yes. That contained that information. Yes. On pages 193 and 212, there is a pre-sentence report. Is that publicly? Is that part of the public record? That's part of the certified administrative record in this case. I'm sorry, give me that side again. Pages 193 and 212. She told a probation officer during, she told a probation officer who was preparing a pre-sentence report as part of her federal criminal conviction that she has visited her father at least three times. She testified before the immigration judge that her father never left Nicaragua, that he died there. Do we know when he died? He died in 1992. He died of a heart attack. That's pages 98, 116, and 194 are the pages that relate to his continued presence in Nicaragua until 1992. So although there is an error in the board's decision in that they cited the wrong portion of the certified administrative record, there is testimony, or not rather testimony, there is record evidence that she did return. But putting that aside, we would argue that the record does not compel a contrary conclusion. As this panel has observed, these events, horrific as they may have been, occurred more than 20 years ago. There is no evidence that the men who perpetrated these events are still alive or are still looking for Ms. Brenes. She testified that people are still looking for her and for her family, but she didn't say who is looking for her or why they may be looking for her. She testified that she might be questioned about her family's whereabouts upon her return, but questioning, mere questioning, does not constitute torture. She also testified about significant levels of crime and violence in Nicaragua, but again, there, too, while the country conditions in Nicaragua are unfortunate, crime and violence standing alone do not constitute torture. The standard here is very high. It's a more likely-than-not standard, and the standard of review is a deferential one. It is substantial evidence. This Court, to reverse the board, must conclude that the record not only supports a contrary conclusion but compels a contrary conclusion, and we do not believe that she's met that standard in this case. With respect to counsel's argument that in her brief that the board engaged in improper fact-finding, there's no evidence of that where the board merely applied the facts as found by the immigration judge, and she concedes that in the brief that the board applied the correct legal standard here. We admit that the I.J. made a misstatement in his original decision regarding government's sanction of torture, but the board corrected that error, and there's no dispute that the board corrected that error and applied the correct standard, which is that there is no evidence of acquiescence that the government would turn a blind eye toward any torture. So unless ---- So as I understand, your position is that the statement is actually true. It's simply miscited to the record. Is that what it comes down to? It's miscited, and there's a conflict in Ms. Brenna's testimony. She testified before the immigration judge that she never went back, but she told a probation officer that she visited her father three times. So there's a conflict, and when there are competing views of the evidence, a fact-finder's choice among them cannot be deemed to be clearly erroneous. But again, even putting that aside, we would argue that the decision still stands because of the overwhelming evidence that the Sandinista government now has no interest, no record evidence indicates that they have any interest in any former members of the Somoza regime or the members of their family. So if there are no further questions, we would ask that the Court deny the petition for review. I think not. Thank you very much, Mr. Shaffer. Ms. Alvarez, I'll give you a couple minutes on rebuttal. Thank you. Your Honor, the ---- Your Honors, the evidence or the alleged evidence that the government argues is proof that the BIA got it wrong because there were competing ---- there was competing testimony in the transcript is just not true. Well, you don't deny that the record reflects that the petitioner informed her probation officer that she had visited her father three times. That's in the record. I respectfully, I disagree, Your Honor. On page 212 of the record, of the administrative record, if you look at number 47, it reads, since her arrival in the United States, Ms. Brenna stated that she only visited with her father on three occasions. But the record also reflects that her father never left Nicaragua. So wouldn't that support the inference that she visited him there? If I may, Your Honor, she's asked to clarify this. In the record, and on page 196 of the record, the question is, Ms. Brenna, after you came to the United States in 1988 and prior to your father dying, did you ever see your father? She says, prior to me coming, and the question is, after coming to the United States. She says, yes. Where did you see your father? In Miami. How many times did you see your father? Many times. And if you look at the ---- if she said at one point it was in Miami, and if her mother said that it was in Nicaragua, that they visited Nicaragua, how was the immigration judge supposed to sort through all of that to figure out what happened? Mom never said that she went back to Nicaragua. In fact, she's asked if Hilda Brenna ever went back to Nicaragua. And she says, no, she never went. How do you know? Because I talk to my daughter all the time. She never went back to Nicaragua. In fact, there's about four or five times in the record where she says that she never went back to Nicaragua. If you look at page 169 where they're asking respondents or petitioner's mother if her husband ever left Nicaragua, it was in the context of did you ever leave your country, not did you ever leave for a visit. Those are two different things. And there's no confusion here. What's going on is that the government is trying to patch up this egregious error that the BIA made. It's egregious. Is it that or is it the task that every fact finder makes in reviewing testimony that may be at odds with one another and having to choose what to believe? Your Honor, if the BIA had been confused and had stated in the decision, we're a little bit confused because there's testimony here, there's testimony there. But in the record or in the decision, they don't say that. They just cite to the transcript where Ms. Brenes' mother is speaking and nothing more. The problem I'm having as an appellate judge is you want us to retry the facts. We have with the assistance of your opposing counsel now, I guess I now understand, that there was conflicting testimony in the record as to whether she did or did not go to Nicaragua on three occasions. But the question is could a reasonable fact finder have concluded based on reasonable inferences to be drawn from those pieces of evidence that she did? And if the answer is yes, then doesn't that meet the substantial evidence test? The IJ below never said that he had found that she went back three times. So the only reason that the BIA made that mistake is because they were reading it maybe very quickly. They were reading the transcript in a way that I thought is a bit reckless. Let me ask this. Let's just make the assumption that this was a mistake and she never actually went back to Nicaragua. But where's the evidence from which they must have found that there was a present danger that she would be tortured, not that 20 years ago she was tortured? But, Your Honor, I believe that that would require that we get into the minds of the BIA or the panel that was reviewing the decision. Because we don't know really what their decision-making process was based on different facts. This is based on erroneous facts. And I don't think we have to even ask that question. Let's not go into that decider's mind. Let's try and go into our own mind and say what is on the record that's a fact that compels or perhaps permits a finding that tomorrow she'll be tortured when 20 years have passed? That's the question. Well, here's the answer. Ms. Brenda's mother reported the rapes to the Sandinista Army. She went to headquarters and said, we have been raped. Can you do something about it? Can you investigate this? They did nothing. The Sandinista regime at the time of this hearing was in power again. So that leads one to believe... The rapes occurred 20 years ago, and she reported at the time the Sandinista Army would do nothing. Exactly. Okay. And then there was a change in government, and at the time of the hearing the Sandinistas were back in power. Yes. That doesn't really answer Judge Garbus' question, which is what evidence do we have in the record to show today, or at the time of the hearing, the merits hearing, that if she returned she would face a risk of persecution? Well, there are several articles in the country conditions that were submitted, and those articles do point to the fact that many crimes go unpunished in Nicaragua, that the regime is corrupt, that the government is corrupt there. And so if in fact the BIA, I don't think it can separate the analyses. If the BIA is rendering an opinion or a decision based on erroneous facts, then you can't really understand exactly how they got there. So, for example, let's say that they... And he references the country reports in the record, do not show mass human rights violations, and even assuming that what respondent experienced constitutes past torture, the changes in circumstances described above undermine a claim of future torture. And she has not met her heavy burden of proving it's likely that she will be tortured in Nicaragua. Well, he used the wrong standard to begin with, Your Honor. And the BIA then had to use the correct standard and apply the facts to that, and included their own facts. So they also engaged in improper fact-finding. I've let you go way over. You were just going to answer my question about Chenery. And where in your opening brief you made that argument? Your Honor, unfortunately, Chenery was not cited in the brief. However, I believe that the principles of Chenery have been around since 1943, 1947. And I think that everyone's aware. And instead of insulting you with a 28-J letter, with that particular, you know, oh, hey, by the way, I think you're all aware of that. Well, if that's a major premise that you're relying upon, it would be nice that we were apprised of that in your opening brief. I apologize for that, Your Honor. Thank you. Okay. Thank you very much. The case just argued is submitted.
judges: Garbis, Tallman, Rawlinson